**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)               *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALBERT VARGAS,** | : | Civil Action No. |
| 3425 N Howard Street | : | |
| Philadelphia, PA 19140 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **FOGO HOSPITALITY, INC. d/b/a** | : | |
| **FOGO DE CHAO,** | : | |
| 1337 Chestnut Street | : | |
| Philadelphia, PA 19107 | : | |
| | : | |
| 14850 Quorum Drive, Suite 500 | : | |
| Dallas, TX 75254 | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Albert Vargas (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Fogo Hospitality, Inc. d/b/a Fogo de Chao (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").  In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Fogo Hospitality, Inc. d/b/a Fogo de Chao is a chain of Brazilian steakhouses with a location at 1337 Chestnut Street, Philadelphia, PA 19107 and with corporate headquarters located at 14850 Quorum Drive, Suite 500, Dallas, TX 75254.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII, the ADA and the PHRA.

13. Plaintiff timely filed his Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 11, 2023, alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned Charge Number 530-2023-06631 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated June 13, 2025. Plaintiff received the Notice via request by electronic mail.

16. Prior to the initiation of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and more than one year after filing,

but within two (2) years of the issuance of the Right to Sue, in this matter, as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about October 5, 2022, Defendant hired Plaintiff in the position of Server.

21. Plaintiff was well qualified for his position and performed well.

22. In or around October 2022, Plaintiff broke his metacarpal bone outside of work.

23. Plaintiff's broken metacarpal bone was considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") as it affected the major life activities, of, *inter alia*, lifting and carrying.

24. Plaintiff was placed on a medical leave of absence as a result.

25. In or around November 2022, Plaintiff returned to work at Defendant at full duty.

26. In December 2022, Ricardo Terebinto, General Manager, instructed Plaintiff to sign a resignation letter.

27. Plaintiff refused to do so, as he wanted to work at Defendant, and continued to do so.

28. On or about March 8, 2023, Plaintiff rebroke his metacarpal bone outside of work.

29. Plaintiff's broken metacarpal bone affected the major life activities of, *inter alia*, lifting and carrying.

30. Terebinto told Plaintiff to take some time off and to contact him two (2) weeks prior to the date Plaintiff was ready to return to work.

31. On or about April 28, 2023, Plaintiff went to Defendant and informed Defendant he was ready to return to work.

32. At this point, Plaintiff was no longer in a cast.

33. Instead of allowing Plaintiff to return to work, Terebinto told Plaintiff there was no room for him, or words to that effect, and tried to coerce Plaintiff into signing a resignation letter.

34. On or about May 10, 2023, Plaintiff went back to Defendant to get paystubs and a letter in order to get into a program to assist him with his rent.

35. Again, Terebinto tried to coerce Plaintiff into signing a resignation letter, which Plaintiff refused to sign.

36. Plaintiff sent an email to another manager at Defendant indicating that he needed his paystubs and a letter stating that he was on unpaid leave because Terebinto indicated there was no room for Plaintiff to return in order to enter into this rent assistance program.

37. Plaintiff learned about a family trust fund for employees of Defendant.

38. Plaintiff learned he was eligible for this program since he was on unpaid leave at this time.

39. Plaintiff applied for the family trust fund on or about June 9, 2023.

40. On or about June 10, 2023, Plaintiff received a termination letter from Defendant without a reason given for Plaintiff's termination.

41. Plaintiff called Defendant's Human Resources.

42. A Human Resources employee told Plaintiff that Terebinto had informed Human Resources that Plaintiff came in a few days prior and stated that Plaintiff did not want to work for Defendant anymore.

43. This was not true.

44. Plaintiff did not state that he did not want to work for Defendant anymore.

45. Human Resources could not answer Plaintiff's questions about the reason for termination.

46. Ultimately, Plaintiff, Terebinto, and Grant Rice, Human Resources Director, were in a conference call.

47. During that conference call, Terebinto restated his false story, that Plaintiff had come in a couple of days prior and said he did not want to work at Defendant anymore.

48. Plaintiff again stated that this was not true.

49. Terebinto then stated, "Oh wow, you changed your mind that fast" or words to that effect when Plaintiff explained what happened.

50. Despite this, Plaintiff was not reinstated.

51. Upon information and belief, there were dozens of available Server positions at all times relevant into which Plaintiff could have been placed.

52. Defendant's actions interfered with Plaintiff's ability to enter into the rent assistance program and denied him access to the trust fund to which Plaintiff was eligible.

53. Defendant's actions have caused Plaintiff to suffer harm and damages.

54. Defendant discriminated against Plaintiff based on his disability and taking a medical leave of absence and retaliated against Plaintiff for engaging in the protected activity of

requesting a return to work/reinstatement after the accommodation period ended in violation of the ADA, the PHRA and the PFPO.

55. Defendant's actions and/or omissions were willful or performed with reckless disregard to Plaintiff's statutorily protected rights.

### COUNT I – DISABILITY DISCRIMINATION
### <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

56. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

57. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

58. Plaintiff was qualified to perform the job.

59. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

60. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

61. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

62. Plaintiff's disabilities motivated Defendant's decision that resulted in Plaintiff's termination.

63. The purported reason for Defendant's decision is pretextual.

64. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

65. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

66. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

67. Defendant's actions and/or omissions were willful or performed with reckless disregard to Plaintiff's rights under the ADA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

70. Plaintiff was qualified to perform the job.

71. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

72. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

73. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

74. Plaintiff's disabilities motivated Defendant's decision that resulted in Plaintiff's termination.

75. The purported reason for Defendant's decision is pretextual.

76. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

77. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

78. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

81. Plaintiff was qualified to perform the job.

82. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

83. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

84. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

85. Plaintiff's disabilities motivated Defendant's decision that resulted in Plaintiff's

termination.

86. The purported reason for Defendant's decision is pretextual.

87. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

88. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

89. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV – RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

90. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

91. Plaintiff engaged in activity protected by the ADA when he requested reasonable accommodations.

92. Thereafter, Defendant took materially adverse actions against Plaintiff, including, but not limited to, termination.

93. There exists a causal connection between Plaintiff's participation of the protected activity and the materially adverse action(s).

94. Defendant's actions and/or omissions were willful or performed with reckless disregard to Plaintiff's rights under the ADA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

95. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

96. Plaintiff engaged in activity protected by the PHRA when he requested reasonable accommodations for his disability.

97. Thereafter, Defendant took materially adverse actions against Plaintiff, including, but not limited to, termination.

98. There exists a causal connection between Plaintiff's participation of the protected activity and the materially adverse action(s).

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

99. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

100. Plaintiff engaged in activity protected by the PFPO when he requested reasonable accommodations for his disability.

101. Thereafter, Defendant took materially adverse actions against Plaintiff, including, but not limited to, termination.

102. There exists a causal connection between Plaintiff's participation of the protected activity and the materially adverse action(s).

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Albert Vargas, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Emotional pain and suffering;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences;

(h) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the PFPO.

(i) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                            **RESPECTFULLY SUBMITTED,**
                                            **KOLLER LAW, LLC**

Date: September 11, 2025       **By:**  */s/ David M. Koller*
                                                    David M. Koller, Esquire (90119)
                                                    Jordan D. Santo, Esquire (320573)
                                                    2043 Locust Street, Suite 1B
                                                    Philadelphia, PA 19103
                                                    215-545-8917
                                                    davidk@kollerlawfirm.com
                                                    jordans@kollerlawfirm.com

                                                    *Counsel for Plaintiff*